# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| CHRISTOPHER SEXTON, )<br>     Plaintiff  )<br>                       )<br>v.                       )<br>                       )<br>HAMBLEN COUNTY, )<br>HAMBLEN COUNTY SHERIFF )<br>ESCO JARNIGAN, )<br>TERESA LAWS, HAMBLEN )<br>COUNTY JAIL ADMINISTRATOR, )<br>BOOKING OFFICER AT TIME )<br>OF BOOKING OF PLAINTIFF, )<br>     Defendants  ) | CASE NO.: _____<br>JURY TRIAL DEMANDED |

**COMES NOW**, Plaintiff, by and through his undersigned attorneys and files this his complaint pursuant to 42 U.S.C. § 1983 and §1988 damages against Defendants as follows:

## PARTIES

## PLAINTIFF

1. At all times material hereto Plaintiff was a pre-trial detainee housed at the Hamblen County Jail.

## DEFENDANTS

2. At all times material hereto, Hamblen County owned the Hamblen County Jail located at 510 Alison Street, Morristown, Hamblen County, Tennessee. Hamblen County is a political governmental entity in the State of Tennessee.

3. At all times material hereto Sheriff Esco Jarnigan was the duly elected Sheriff of Hamblen County acting under color of law who was statutorily

responsible for the operation of the Hamblen County Jail; for the hiring, firing, training and supervision of deputies to man the Jail; and for the safety of persons housed therein against their will. He owed a duty to Plaintiff under the Fourteenth Amendment to take the necessary actions to ensure that Plaintiff's constitutional rights were upheld while he was in the Hamblen County Jail.

4. Sheriff Jarnigan appointed Teresa Laws to be the head jailer and other members of the Sheriff's Department were assigned to work at the Hamblen County Jail under Teresa Laws, including the Booking Officer who booked Plaintiff into the Jail.

5. Sheriff Jarnigan and Teresa Laws knew that for years the Tennessee Corrections Institute had issued annual reports to them and Hamblen County advising that the Hamblen County Jail failed to meet the minimum standards set forth by the Tennessee Corrections Institute, including that the Jail suffered from chronic, persistent overcrowding and understaffing. These conditions, well known to Hamblen County, Sheriff Jarnigan and Teresa Laws, prevented inmates from being properly classified and housed so as to the reduce the likelihood of violence against other inmates and housed accordingly. This condition continued to exist through the first six months of 2017.

6. At all times material hereto, Defendants knew that they were housing dangerously violent inmates with non-violent inmates and thus creating the potential for violence upon the weaker, non-violent inmates. In fact, Defendants had been sued previously in this Court over facts remarkably similar to this case. *Garcia v. Hamblen County, et al*, 2:16-cv-00036 PLR MCLC. Furthermore, there had been yet another earlier situation at the Hamblen County

Jail of which Defendants were aware involving several male inmates (Killion, Lynch and Popaduik) who beat another inmate named Sterling Morgan. All of these incidents of inmate on inmate violence occurred in an area of the Jail known as "The Annex".

7. At all times material hereto, Defendant Teresa Laws had the authority and ability to classify inmates according to their propensity for violence and to instruct the booking officers and corrections officers to segregate inmates according to their propensity to violence. On information and belief, Defendant Laws knew that the booking officers were intentionally placing non-violent offenders into The Annex with violent offenders, notwithstanding the known risk of harm to the non-violent offenders. T.C.A. § 41-4-103.

8. At all times material hereto, the Booking Officer who booked Plaintiff into the Hamblen County Jail in March of 2017 specifically knew that housing Plaintiff in a particular area of the Jail known as The Annex with violent inmates would result in the increased likelihood that Plaintiff would suffer violence at the hands of his cell mates yet advised Plaintiff that the Booking Officer did not care and that was where Plaintiff was going to be housed.

9. At all time material hereto Defendant Jarnigan refused to implement a classification system so as to prevent known violent offenders from being housed with non-violent offenders despite his actual knowledge that the failure to house inmates according to a proper classification system would, and had, resulted in physical harm being inflicted on weaker, non-violent inmates by the violent offenders.

## STATEMENT OF FACTS

10. When Plaintiff was booked into the Hamblen County Jail, he advised the Defendant Booking officer that if that Officer placed Plaintiff in the Annex, that Plaintiff would be injured by the other inmates.

11. The Defendant Booking Officer advised Plaintiff that he "did not care" and notwithstanding Plaintiff's concern, placed Plaintiff in the Annex that housed several violent inmates.

12. The Annex was designed to house twenty-four (24) inmates and yet was housing three times that number at the time that Plaintiff was assigned to it.

13. In less than two days of being placed in this overcrowded with Annex with the inmates who were known to the all of Defendants to be violent, Plaintiff was brutally attacked and mercilessly and savagely beaten, causing multiple fractures of his jaw, a fracture of the bone around his eye, his nose was broken, he suffered broken teeth, a concussion, cuts, bleeding and abrasions about his head. Plaintiff was left with an obvious deformity of the left cheek and jaw, making his injuries open and obvious and sufficiently serious so as to warrant the need for medical examination and treatment.

14. Despite Plaintiff's pleas to the guards to see the nurse or a doctor, the guards on duty refused Plaintiff access to medical care even though his injury clearly required medical attention.

15. Plaintiff's family was finally able to bond Plaintiff out of the Hamblen County Jail two days later, and upon seeing his physical condition, took Plaintiff immediately to the Lakeway Regional Hospital Emergency Room.

16. Due to the severity of Plaintiff's injuries, Lakeway Regional Hospital transferred Plaintiff to the University of Tennessee Medical Center to treat him, which included wiring Plaintiff's jaw shut, and setting the fractures around his eye.

17. The severe overcrowding and understaffing had resulted in numerous documented inmate on inmate assaults every year for the previous five years to this incident. In 2017 the Hamblen County Jail was designed to hold 255 inmates and yet Jail records revealed that the average daily inmate population from March 1, 2017 through August 18, 2017 was 392 inmates.

18. Due to the over crowding and understaffing, inmates were not being properly monitored or supervised as required and security checks on inmates were not being performed by specific policy implemented at the Hamblen County Jail by Defendants Hamblen County, Jarnigan and Laws. "Should a fight breakout, a phenomenon Mize says is "an every day occurrence," the math speaks for itself. "You're down to zero," he said. "If a jailer in a control room sees something going on, he or she can't move. Ten sounds like a lot. When you get into operations, it's not a lot." These statements made by Deputy Chief Wayne Mize of the Hamblen County Sheriff's Department in the course and scope of his employment as the spokesperson designated by Hamblen County to speak on the record to Robert Moore, Staff Writer for the Citizens Tribune, back in 2015 acknowledged that the understaffing at the Jail meant that inmates could not be properly supervised so as to prevent the type of harm suffered by Plaintiff.

19. Hamblen County had been warned by Jim Hart, an jail expert and consultant with the Tennessee County Technical Assistance Service that the lack of proper inmate classification and housing based on that classification created liability exposure for Hamblen County for its "failure to protect" inmates in its custody. https://www.t-g.com/story/2213862.html, New Jail Urged: Current facility can't be rehabbed, expert says, by John I. Carney, Times-Gazette, July 16, 2015. https://www.facebook.com/HamblenCountySheriffsOffice/posts/1555797171375418

20. Hamblen County's own Chief Deputy, Wayne Mize, had warned in 2015 that the failure to rectify the overcrowding would someday "cost everyone if there's a lawsuit." "Those who have no qualms about housing inmates like canned sardines, Mize says, may be more attuned to the bottom line – the liability all Hamblen County taxpayers will share if the chronic overcrowding sufficiently offends the sensibilities of a federal judge and he orders new construction on his terms. "It's going to cost everyone if there's a lawsuit," the chief deputy said. https://www.facebook.com/HamblenCountySheriffsOffice/posts/1555797171375418 Citizens Tribune story by Staff Writer Robert Moore.

21. This failure to remedy the overcrowding and the understaffing at the Hamblen County Jail is so long-standing, and well known as to constitute actual policy or custom on the part of the Defendants Hamblen County, Jarnigan and Laws and by their own admission, the overcrowding and understaffing is directly responsible for the inmate on inmate violence. Indeed

the 2017 TCI inspection report pointed to the overcrowding and understaffing as the cause for the failure to perform the functions and duties that were required in order to maintain inmate safety and security in the Jail facility.

22. The deputies assigned to the Jail were routinely failing to conduct criminal background checks so that they would know how to classify and house inmates coming into the Jail due to the understaffing that existed in 2017.

## CAUSES OF ACTION

### COUNT I
### VIOLATION OF PLAINTIFF'S FIFTH, EIGHTH, AND FOURTEENTH AMENDMENT RIGHTS

23. Plaintiff re-alleges paragraphs 1-22, inclusive.

24. Plaintiff had a constitutional right not to be subjected to assault and violence while housed as a pre-trial detainee at the Hamblen County Jail.

25. Plaintiff also had a constitutional right to be provided access to medical care for injuries that were obvious and serious enough to require the attention of medical personnel.

26. Defendant Jarnigan was on notice that the chronic, persistent overcrowding at the Jail prevented persons confined, whether servicing sentences or pre-trial detainees, from being properly classified and housed according to their potential dangerousness to other persons confined and/or to persons working in the Jail.

27. Defendant Jarnigan had the duty and requisite authority to impose a classification system for inmates at the Hamblen County Jail. T.C.A. § 41-4-103.

28. Because of the overcrowding, Defendant Jarnigan had no established policy that would prevent these violent predators from being housed with less-violent inmates or inmates who were perceived as "weaker" and therefor unable to defend themselves against the assaults by violent inmates. Furthermore, Jarnigan failed to maintain a sufficient number of persons to work at the Jail so as to be able to supervise and protect inmates from violence by other inmates.

29. Defendant Jarnigan knew that these violent predatory inmates posed an immediate threat to new inmates placed in the cell with them.

30. Plaintiff had a constitutional right not to be assaulted and beaten while in the custody at the Hamblen County Jail. This right was firmly established and well known by the Defendants prior to the assault on the Plaintiff. Defendants had a duty to take reasonable measures to ensure Plaintiff's physical safety while he was in custody, including safety from violence visited upon him by other inmates.

31. Plaintiff had warned that there would be violence if he was placed in the cell with these violent inmates.

32. Defendant Jarnigan's ignored the substantial risk of physical injury to Plaintiff and/or created a substantial risk of harm to Plaintiff by implementing, tolerating, or ratifying policies and/or customs that deprived Plaintiff of his constitutional right to be free from physical assault while confined to the Hamblen County Jail, including but not limited to:

    a. Accepting prisoners to be housed despite having no room to place them;

b. Failing to take measures at his disposal to reduce the Jail population;

c. Despite knowing of the dangers of overcrowding, Defendant Jarnigan failed to even attempt to implement a classification system so as to house known violent inmates separate and apart from non-violent inmates;

d. Failing to staff the Hamblen County Jail with sufficient deputies/jailers/corrections officers so that inmates could be properly classified at the time they were booked into the Jail and housed accordingly; and

e. Failure to provide injured inmates with access to timely and appropriate medical care.

33. By delaying Plaintiff access to medical care for injuries received in the Jail, Defendant Jarnigan ensured that Plaintiff would become financially responsible for his own treatment upon being bonded out of Jail rather than having that cost borne by the Sheriff's Department budget or Hamblen County.

34. Plaintiff's injuries are continuing and have impaired his relationships and caused him to suffer the loss of the capacity for the enjoyment of life.

**WHEREFORE** Plaintiff demands Judgment against Defendant Jarnigan in the amount of one million dollars and no cents (1,000,000.00), costs of this action, pre-judgment and post-judgment interest.

### COUNT II
### VIOLATION OF PLAINTIFF'S FIFTH, EIGHTH, AND FOURTEENTH AMENDMENT RIGHTS

35. Plaintiff re-alleges paragraphs 1-22, inclusive.

36. Plaintiff had a constitutional right to right not to be subjected to assault and violence while housed as a pre-trial detainee at the Hamblen County Jail.

37. Plaintiff also had a constitutional right to be provided access to medical care for injuries that were obvious and serious enough to require the attention of medical personnel.

38. Defendant Laws was on notice that the chronic, persistent overcrowding at the Jail prevented persons confined, whether serving sentences or pre-trial detainees, from being properly classified and housed according to their potential dangerousness to other persons confined and/or to persons working in the Jail. Laws was further on notice by virtue of the prior incidents of inmate on inmate violence and Plaintiff's warning at the time he was booked that if he was placed in that particular pod there would be violence against him.

39. Notwithstanding that knowledge, Defendant Laws made no changes to the Jail policies to require that inmates who advise the booking officers that there are particular inmates or placements that will result in harm to the inmate be placed in a different pod/cell or that non-violent inmates not be placed in the same pod/cell as violent inmates.

40. Because of the overcrowding, Defendant Laws had no policy that would prevent these violent predators from being housed with less-violent inmates or inmates who were perceived as "weaker" and therefor unable to defend themselves against assaults by these violent, predatory inmates.

41. Defendant Laws knew that these inmates posed an immediate threat to new non-violent inmates such as Plaintiff placed in the cell with them

and yet ignored the substantial risk of physical injury to Plaintiff and/or created a substantial risk of harm to Plaintiff by implementing, tolerating, or ratifying policies and/or customs that deprived Plaintiff of his constitutional right to be free from physical assault while confined to the Hamblen County Jail, including but not limited to:

    a.    Accepting prisoners to be housed despite having no room to place them;

    b.    Failing to take measures at his disposal to reduce the Jail population;

    c.    Despite knowing of the dangers of overcrowding, Defendant Jarnigan failed to even attempt to implement a classification system so as to house known violent inmates separate and apart from non-violent inmates;

    d.    Failing to staff the Hamblen County Jail with sufficient deputies/jailers/corrections officers so that inmates could be properly classified at the time they were booked into the Jail and housed accordingly; and

    e.    Failure to provide injured inmates with access to timely and appropriate medical care.

42.    By delaying Plaintiff access to medical care for injuries received in the Jail, Defendant Laws ensured that Plaintiff would become financially responsible for his own treatment upon being bonded out of Jail rather than having that cost borne by the Sheriff's Department budget or by Hamblen County.

43.    When Plaintiff was injured at the hands of these violent inmates, and his injuries were obvious and serious, Defendant Laws' unwritten policy of

not taking inmates to the hospital or even providing them with access to basic medical evaluation and care deprived Plaintiff of access to timely and appropriate medical evaluation and treatment.

44. Defendant Laws' deprivation of Plaintiff's basic constitutional rights resulted in serious injury to Plaintiff, including multiple fractures of his face and jaw which required surgery to repair, a broken nose, a concussion, and cuts, lacerations and bruises about Plaintiff's head, face and body.

45. Plaintiff's injuries are permanent and he has endured pain and suffering all of which have impaired his relationships and caused him to suffer the loss of the capacity for the enjoyment of life.

**WHEREFORE** Plaintiff demands Judgment against Defendant Laws in the amount of one million dollars and no cents (1,000,000.00), costs of this action, pre-judgment and post-judgment interest, and reasonable attorneys' fees.

**COUNT III**
**NEGLIGENCE BY DEFENDANT HAMBLEN COUNTY**

46. Plaintiff re-alleges paragraphs 1-22, inclusive.

47. Defendant Hamblen County knew for years that the persistent and chronic overcrowding at the Hamblen County Jail prevented a proper classification of persons confined to the Jail as to their dangerousness to other persons confined. The lack of a proper classification system prevented non-violent inmates from being placed separate and apart from violent inmates, thereby increasing the risk of physical harm to the non-violent inmates. Not only was Hamblen County notified by the Tennessee Corrections Institute that the Hamblen County Jail had failed to meet the minimum requirements set forth by

the TCI which included the ability to classify inmates as to their level of dangerousness, it was also notified by numerous lawsuits which pointed to the overcrowding and understaffing as creating an environment in which persons housed in the Jail were being harmed by other inmates. Notwithstanding this notice, Hamblen County took no concrete steps, other than to spend money for "jail studies" over the years and create a committee to "study" the problem when everyone knew what the problem was: too many inmates for the size of the facility and too few personnel to guard them.

48. Defendant Hamblen County knew for years that the failure to properly staff the overcrowded Jail prevented there being sufficient jail staff to be able to intervene to either prevent or mitigate an assault by one or more inmates on another. The Jail staff was simply spread too thin by the refusal of the County to fund sufficient staff to be able to monitor and protect the number of persons confined that the County permitted the Sheriff to accept into the Hamblen County Jail.

49. Defendant Hamblen County has known prior to this incident that the overcrowding and understaffing at the Jail is directly responsible for injuries to inmates, and yet Hamblen County did nothing to either alleviate the overcrowding or sufficiently fund new positions for the Hamblen County Jail staff to enable the staff to prevent and/or intervene when a person confined is being assaulted.

50. By failing and refusing to fund a new Jail for over a decade and failing and refusing to provide the Sheriff's Department with sufficient funds to pay the deputies/jailers/corrections officers a true living wage and to attract and

retain qualified professionals to work at the Jail, Hamblen County ensured that the Jail would remain over-crowded and understaffed. This persistent refusal and failure rose to the level of a policy decision and/or custom and practice to allow the constitutional violations at the Hamblen County Jail to exist and to continue.

51. Furthermore, Hamblen County's unofficial policy of not providing inmates with timely and adequate access to medical care in order to save money constituted a violation of Plaintiff's constitutional rights. Plaintiff's obvious and serious injuries following the savage beating by the violent inmates in his cell clearly required timely medical evaluation and treatment but the policy of not allowing access to medical care constituted a deliberate indifference to the health and well-being of the Plaintiff in the name of saving a few dollars.

52. This deprivation of Plaintiff's constitutional rights was under color of law and constituted a custom, practice, policy or procedure for the denial of the rights of inmates, including the Plaintiff.

53. Due to these constitutional violations, Plaintiff was savagely beaten and denied timely access to appropriate medical care. He suffered multiple fractures of his face and jaw, a concussion, cuts and bruise about his head, face and body which required immediate surgery to repair.

54. Plaintiff has incurred medical bills and his injuries are permanent and continuing in nature; he endured pain and suffering and loss of the capacity for the enjoyment of life.

55. Plaintiff is entitled to reasonable attorneys fees pursuant to 42 U.S.C. § 1988.

**WHEREFORE** Plaintiff demands judgment against Hamblen County in the amount of one million dollars and no cents (1,000,000.00), costs of this action, pre-judgment and post-judgment interest and reasonable attorneys fees.

## COUNT IV
### VIOLATION OF PLAINTIFF'S CONSTITUTIONAL RIGHTS ON THE PART OF THE BOOKING OFFICER

56. Plaintiff re-alleges paragraphs 22, inclusive.

57. Plaintiff specifically advised the Defendant Booking Officer whose name is presently unknown but will be obtained through discovery and substituted for the description of this particular Defendant, that if the Defendant Booking Officer assigned Plaintiff to a specific cell/pod that he would be in danger of harm from the other inmates. The Booking Officer was acting under color of law in his interactions with the Plaintiff.

58. Notwithstanding that specific information about the imminent risk of harm to the Plaintiff, the Defendant Booking Officer placed Plaintiff in that cell/pod after telling Plaintiff he "did not care" if Plaintiff got assaulted in the cell. This statement evinces a deliberate disregard for the constitutional rights of the Plaintiff to be free from violence while incarcerated at the Hamblen County Jail as a pre-trial detainee.

59. As Plaintiff had advised, he was indeed jumped by the violent inmates in his cell/pod and beaten savagely upon being placed with those inmates.

60. As a result of this brutal beating at the hands of other inmates, Plaintiff suffered physical injuries that required hospitalization and surgery to repair, and caused Plaintiff great pain and suffering from those injuries.

Plaintiff's injuries were permanent or are continuing in nature and have affected Plaintiff's capacity for the enjoyment of life.

61. Defendant Booking Officer was on specific notice of the threat to Plaintiff prior to placing Plaintiff in the particular cell/pod, and yet chose to put Plaintiff in that cell/pod all the same demonstrating a deliberate indifference for the Plaintiff's constitutional rights not to be assaulted and beaten at the Jail.

62. Plaintiff suffered multiple fractures to his face and jaw, a concussion, cuts and bruises about his head and face, which required surgery to repair.

63. Plaintiff also endured pain and suffering and the loss of the capacity for the enjoyment of life.

64. These injuries are permanent and/or continuing.

65. Plaintiff is entitled to attorneys fees and costs pursuant to 42 USC § 1988.

66. Defendant's actions were so depraved and intentional as to give rise to the entitlement to punitive damages.

**WHEREFORE** Plaintiff demands Judgment against Defendant Booking Officer in the amount of one million dollars and no cents (1,000,000.00), costs of this action, pre-judgment and post-judgment interest, reasonable attorneys fees, and punitive damages in the amount of two million dollars and no cents (2,000,000.00) against this Defendant.

# COUNT V

## RATIFICATION BY DEFENDANTS HAMBLEN COUNTY, JARNIGAN AND LAWS

67. Plaintiff re-alleges paragraphs 1-66 inclusive.

68. Defendants were aware of the prior incidents, and this one, and yet made no investigation, imposed no discipline, or otherwise changed any policies and procedures to prevent a similar incident in the future. Because of that Plaintiff was injured.

69. Defendants conducted no investigation into what happened that resulted in Plaintiff's injuries or why Plaintiff was not provided timely access to appropriate medical care.

70. Despite the fact that Defendants Hamblen County, Jarnigan and Laws knew that Plaintiff's injuries were the result of a vicious physical attack on him in violation of his civil rights and the denial of access to timely and appropriate medical care and treatment, Defendants made no investigation into this event.

71. Having failed to investigate, discipline and/or otherwise change the policies at the Jail to correct the unconstitutional conduct prior to Plaintiff's incarceration, Defendants have ratified the conduct, which resulted in Plaintiff's injuries set forth more fully above.

72. Plaintiff is entitled to reasonable attorneys fees pursuant to 42 U.S.C. § 1988.

**WHEREFORE** Plaintiff demands judgment against Defendants Hamblen County, Jarnigan and Laws in the amount of one million dollars and no cents

(1,000,000.00), costs of this action, pre-judgment and post-judgment interest, and reasonable attorneys fees.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury pursuant to his Constitutional right to a trial by jury and Federal Rule 38 (b), Federal Rules of Civil Procedure.

**RESPECTFULLY SUBMITTED**, this the **27th** day of **March**, 2018.

          **THE BOWLIN LAW FIRM P.C.**

BY: _____
    Troy L. Bowlin, II, Esq. No. 025893
    Attorney for Christopher Sexton
    400 West 1st North Street
    Morristown, TN 37814
    Telephone: (423) 581-2667